UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKE ZHOU a/k/a JIEYANG ZHOU,<br><br>Plaintiff,<br><br>v.<br><br>TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement,<br><br>Defendant. | No. 2:25-cv-01186-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Plaintiff Jake Zhou a/k/a Jieyang Zhou's ("Plaintiff") Motion for a Temporary Restraining Order ("TRO") against Defendant Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement ("ICE" or "Defendant"). (ECF No. 2.) For the reasons set forth below, Plaintiff's motion is GRANTED.

///
///
///
///
///
///
///
///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

The instant action arises out of Defendant's allegedly unlawful termination of Plaintiff's record in the Student and Exchange Visitor Information System ("SEVIS") and his F-1 nonimmigrant student status. (ECF No. 1.) Plaintiff is a citizen and national of the People's Republic of China. (*Id.* at 9.) In 2018, the University of Southern California ("USC") offered Plaintiff a position in its Master of Science program in Materials Science, Plaintiff accepted, and USC issued him a Form I-20 and put him into SEVIS. (*Id.*) Plaintiff then applied for an F-1 visa, attended an interview at the consulate in Beijing, acquired an F-1 visa, sought admission into the United States with his F-1 visa, and U.S. Customs and Border Protection ("CBP") admitted him for a duration of status. (*Id.*)

On July 23, 2019, Plaintiff was visiting San Francisco with his then-girlfriend, the two of them got into an argument on the street, and a passerby called the police. (*Id.* at 10.) The police detained Plaintiff but when he showed up to the courthouse for his initial hearing, he was informed the case was dismissed. (*Id.*) Plaintiff therefore has no criminal record because all charges, to the extent there were any, were dismissed. (*Id.*) This incident did not interfere with Plaintiff's class attendance, and he continued to pursue his degree at USC in the normal course despite this detention. (*Id.*)

Plaintiff graduated from USC in 2020 and moved on to pursue his doctorate in Materials Science and Engineering at the University of California, Davis. (*Id.*) Plaintiff alleges he never violated his F-1 status because he has continuously pursued his degree in the normal course. (*Id.*) On April 6, 2025, the Services for International Students and Scholars ("SISS") at UC Davis emailed Plaintiff to inform him ICE terminated his SEVIS record on April 4, 2025. (*Id.*) Plaintiff was told his SEVIS record was terminated with the following notation: "Individual identified in criminal records check and/or has their visa revoked. SEVIS record has been terminated." (*Id.*)

Plaintiff alleges ICE gave him no notice or opportunity to respond and this termination causes him a lot of harm immediately in three distinct ways. (*Id.*) First, Plaintiff alleges he has

---

[1]     The following factual background is taken largely verbatim from Plaintiff's Complaint. (ECF No. 1.)

2

1  lost his F-1 immigration status, which means he cannot finish his degree at UC Davis even though
2  he is set to get his doctorate next year, he cannot continue his current research or his on-campus
3  employment, and it would render his previous years of pursuing his doctorate worthless. (*Id.* at
4  10–11.) Second, Plaintiff alleges he is now accruing unlawful presence in the United States,
5  which will hurt his chances at seeking re-admission in the future for work, pleasure, or
6  investment. (*Id.* at 11.) Third, Plaintiff alleges the Government's baseless charge that Plaintiff
7  has a criminal record hurts his reputation. (*Id.*) Plaintiff asserts that if a U.S. employer wanted to
8  petition for an employment-based visa in the future for him, he would have to tell them his F-1
9  visa was terminated for a criminal record that does not exist, which will hurt his chances. (*Id.*)
10 Plaintiff finally alleges this is causing him serious mental anguish, as he has no family in the
11 United States, is not employed, is very close to finishing his doctorate, and the thought of losing
12 all his work for his doctorate is very hard. (*Id.*)
13       On April 24, 2024, Plaintiff filed a Complaint in this Court, alleging a single claim for
14 unlawful decision in violation of the Administrative Procedure Act ("APA"). (*See* ECF No. 1.)
15 On the same date, Plaintiff filed the instant motion for a TRO. (ECF No. 2.)
16       **II.    STANDARD OF LAW**
17       A TRO is an extraordinary remedy. The purpose of a TRO is to preserve the status quo
18 pending a fuller hearing. *See* Fed. R. Civ. P. 65. In general, "[t]emporary restraining orders are
19 governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*,
20 No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations
21 omitted); *see also* E.D. Cal. L.R. 231(a).
22       Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
23 showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555
24 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The
25 purpose of a preliminary injunction is merely to preserve the relative positions of the parties until
26 a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also*
27 *Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The
28 purpose of such an order is to preserve the status quo until a final determination following a

1 trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *All. for the Wild Rockies v. Cottrell (Alliance)*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id*. A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. Simply put, a plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in the plaintiff's favor in order to succeed in a request for preliminary injunction. *Id*. at 1134–35.

### III.     ANALYSIS

The Court considers each of the *Winter* elements with respect to Plaintiff's motion for a TRO.

#### A.     Likelihood of Success on the Merits

Plaintiff argues Defendant's SEVIS/F-1 termination is arbitrary and capricious for the following reasons: Defendant did not set forth an explanation for its decision; Defendant failed to consider the fact that Plaintiff has no criminal record; Defendant's claim that it terminated Plaintiff's SEVIS status based on a visa revocation could not be true because as of the date of Plaintiff receiving this notice, his visa had not been revoked; no statute gives Defendant authority to terminate a SEVIS record and F-1 status through a mere notation in SEVIS; Defendant does not have authority to terminate SEVIS records and F-1 status without going through the procedures in 8 C.F.R. § 214.1(d), which it did not; Defendant has not initiated removal

4

proceedings, proven by clear and convincing evidence that Plaintiff is removable for violating his nonimmigrant status, and acquired a removal order from an in immigration judge under 8 U.S.C. § 1229; no sub-regulatory guidance authorizes Defendant to terminate a SEVIS record and F-1 status for failure to maintain status; and Defendant violated Plaintiff's procedural due process rights because he has a property interest in his F-1 status and Defendant did not provide him with timely pre-termination notice and an opportunity to respond.  (ECF No. 2 at 14–19.)

"The APA sets forth procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.* (*Regents*), 591 U.S. 1, 16 (2020) (internal quotations and citation omitted).  Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704.  An "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see also* 5 U.S.C. § 701 (in the context of the APA's judicial review provisions, "agency action" is defined by 5 U.S.C. § 551).

The APA "requires agencies to engage in 'reasoned decisionmaking,' . . . and directs that agency actions be 'set aside' if they are 'arbitrary' or 'capricious.'" *Regents*, 591 U.S. at 16 (citing *Michigan v. EPA*, 576 U.S. 743, 750 (2015); 5 U.S.C. § 706(2)(A)).  The "arbitrary" or "capricious" standard of review is narrow, and "a court is not to substitute its judgment for that of the agency, . . . but instead to assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  "Despite this narrow scope of review, the court's inquiry must be searching and careful," and "[u]ltimately, the agency must articulate a rational connection between the facts found and the conclusions made." *J.L. v. Cissna*, 374 F. Supp. 3d 855, 865 (N.D. Cal. 2019) (internal quotations removed) (citing *Marsh v. Or. Nat'l Res. Council*, 490 U.S. 360, 378 (1989); *Or. Nat'l Res. Council v. Lowe*, 109 F.3d 521, 526 (9th Cir. 1997)). Courts will only reverse a decision as arbitrary and capricious if the agency

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

> before the agency, or [an explanation that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Lands Council v. McNair*, 537 F.3d 981, 987, 993 (9th Cir. 2008) (quotations and citation omitted), *overruling on other grounds recognized by Keene v. City and County of San Francisco*, No. 24-1574, 2025 WL 341831 (9th Cir. Jan. 30, 2025).

While mindful of the fact that Defendant has not had the opportunity to submit argument in opposition to Plaintiff's motion, the Court nevertheless agrees that Plaintiff has sufficiently established a likelihood of success on the merits as to his APA claim at this time.

As a preliminary matter, Plaintiff contends Defendant's termination of his SEVIS record and F-1 status is final because it is the consummation of the agency's decision-making process, it has immediate legal consequences because it leaves Plaintiff without lawful immigration status in the United States, and legal consequences flow from SEVIS terminations. (ECF No. 2 at 9–14.) In his declaration, Plaintiff avers that SISS at UC Davis emailed him on April 6, 2025 to notify him that Defendant terminated his SEVIS record on April 4, 2025, and Plaintiff attaches this email to his declaration. (ECF No. 2-3 at 2, 7.) The Court agrees that this action effectively terminated Plaintiff's F-1 status, which "constitutes a final decision reviewable under the APA." *Doe v. Noem, et al.*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *5 (E.D. Cal. Apr. 17, 2025) (citing *Jie Fang v. Dir. United States Immigr. & Customs Enf't* (*Fang*), 935 F.3d 172, 182 (3d Cir. 2019)). Accordingly, the Court concludes Defendant's action constitutes final agency action subject to review under the APA.

Plaintiff avers in his declaration that he was told his SEVIS record was terminated with the following notation: "Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated." (*Id.* at 2.) With respect to a criminal records check, Plaintiff explains in his declaration that he was previously detained for battery in 2019, but when he showed up for his initial hearing, he was informed the case was dismissed. (*Id.* at 1.) Plaintiff avers: "I have no criminal record." (*Id.*) F-1 status can be terminated for failure to maintain status in a limited number of ways. *Fang*, 935 F.3d at 185 n.100. One of these ways

6

includes the F-1 student committing an act that federal regulations explicitly define as a failure to maintain status, including: "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)[.]" 8 C.F.R. § 214.1.(g). Based on Plaintiff's declaration and evidence, the Court finds it is likely he can establish he did not fail to maintain status based on 8 C.F.R. § 214.1(g) "because he has not been convicted of a crime, much less a crime of violence for which a sentence of more than one year imprisonment may be imposed." *Doe*, 2025 WL 1134977, at *5. The Court also concludes no other regulatory ground "for failure to maintain status is at issue here." *Id.*; 8 C.F.R. §§ 214.1(e)–(g).

With respect to having a visa revoked, federal regulations permit "termination of a student's F-1 visa status in three ways: 1) by revoking a waiver that the Attorney General had previously authorized under § 212(d)(3) or (4) of the Immigration and Nationality Act; 2) 'by the introduction of a private bill to confer permanent resident status'[;] or 3) 'pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." *Id.* at *6 (quoting *Fang*, 935 F.3d at 176; 8 C.F.R. § 214.1(d)). Federal regulations do not permit revocation of Plaintiff's F-1 visa as a reason to terminate his F-1 status in the SEVIS system. *Id.* (citing *John Roe v. Noem*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa.")). Here, Plaintiff's declaration establishes it is likely Defendant's proffered reasons[2] to terminate his SEVIS record are not permitted by the applicable regulations.

Accordingly, Plaintiff is likely to establish Defendant violated the APA because its decision to terminate his SEVIS record, which effectively terminated his F-1 status, was arbitrary and capricious and an abuse of discretion. *Id.* Further, several other district courts to consider this exact issue have recently come to the same conclusion. *Id.* (citing cases). Therefore, Plaintiff has shown a likelihood of success on the merits of his APA claim.

---

[2] Defendant's proffered reasons are: "Individual identified in criminal records check and/or has had their visa revoked." (ECF No. 2-3 at 2.)

B.  Irreparable Harm

Plaintiff argues he has lost his SEVIS record, F-1 status, ability to graduate, and future work authorization. (ECF No. 2 at 20.) Plaintiff further asserts he cannot finish his research or his degree, which will hurt his professional career and stunt his professional development. (*Id.*) Plaintiff contends Defendant "is doing serious harm to [Plaintiff's] reputation by claiming that he has a criminal record when he has no such record," which "stains his reputation, goodwill, and relationship, and [Plaintiff] will have to explain to consular officers or employers that his SEVIS record and F-1 status were revoked on criminal grounds." (*Id.*) The loss of Plaintiff's F-1 status in particular places Plaintiff's "education, research, financial stability, and career trajector[y] at imminent risk of irreparable harm." *Roe*, 2025 WL 1114694, at *3. Further, Plaintiff also notes he risks imminent detention or physical removal from the United States. (ECF No. 2 at 20); *Roe*, 2025 WL 1114694, at *3; *Doe*, 2025 WL 1134977, at *8. Accordingly, the Court finds Plaintiff has adequately demonstrated a likelihood of imminent and irreparable harm absent injunctive relief.

C.  Balance of Equities

Having found Plaintiff has shown a likelihood of success on the merits of his APA claim and a likelihood of irreparable harm absent an injunction, Plaintiff must demonstrate the balance of hardships tips sharply in his favor. *See Alliance*, 632 F.3d at 1134–35. A court balancing the equities will look to possible harm that could befall either party. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*, 348 Fed. App'x. 288 (9th Cir. 2009). Here, Plaintiff asserts that the equities favor him because Defendant's termination of his SEVIS record and F-1 status "are clearly unlawful" and the "equities favor stopping such unlawful acts." (ECF No. 2 at 20.) Plaintiff contends an "injunction will only stop the legal effects of the termination decision" and allow him "to continue to live in the United States and continue his F-1 status[.]" (*Id.*) As Plaintiff correctly notes, an injunction does not prevent Defendant "from taking the appropriate steps to terminate Plaintiff's SEVIS record and F-1 status through [8 C.F.R.] § 214.1(d) or initiating removal proceedings under § 1229." (ECF No. 2 at 20.) By contrast, without injunctive relief, the Court agrees that Plaintiff will live in "fear of

1 | detention or physical removal." (ECF No. 2 at 20.)  For these reasons, the Court finds the balance
2 | of equities sufficiently tips in Plaintiff's favor.

### D. Public Interest

"[W]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Accordingly, even though Plaintiff provides no argument specifically directed to the public interest factor (*see* ECF No. 2), the Court finds the public interest is served through the issuance of a TRO to preserve the status quo for a short duration until all parties have an opportunity to fully brief the Court on the issues. *Roe*, 2025 WL 1114694, at *4. Further, Plaintiff appears to have no criminal convictions and has not been charged with a crime. Therefore, the Court is not concerned that public safety would be jeopardized. *Doe*, 2025 WL 1134977, at *8.

### E. Bond Requirement

Lastly, the Court waives the discretionary bond requirement set forth in Rule 65. *See Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (citing *People of California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir. 1985)) ("[C]ourts have discretion to excuse the bond requirement[.]"). The Court has concluded there is no realistic likelihood of harm to Defendant as a result of this TRO. *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."). Furthermore, the Court finds waiver of the bond requirement is appropriate here because Plaintiff has sufficiently demonstrated a likelihood of success on the merits of his claim. *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success."). Accordingly, the Court waives the bond requirement.

///

///

9

### IV. CONCLUSION

Plaintiff's Motion for a TRO is GRANTED. (ECF No. 2.) Pending determination on the motion for preliminary injunction, Defendant is: enjoined from terminating Plaintiff's SEVIS record; required to set aside its SEVIS record termination determination; prohibited from detaining or removing Plaintiff based on the SEVIS determination; and enjoined from directly or indirectly enforcing, implementing, or otherwise taking action or imposing any legal consequence as a result of the termination of his SEVIS record.

Defendant is ordered to show cause in writing no later than May 9, 2025, as to why Defendant and all of its officers, agents, employees, attorneys, and all persons under their direction and control, should not be restrained and enjoined and why a preliminary injunction should not issue. Plaintiff may file and serve a reply not later than May 16, 2025. In order to permit the recently-served Defendant an opportunity to review and respond to Plaintiff's motion, the Court finds good cause to exercise its discretion to extend the expiration deadline of the TRO. Fed. R. Civ. P. 65(b)(2). Accordingly, the TRO shall remain in effect for 28 days, or until an order on Plaintiff's request for preliminary injunction issues, whichever is sooner.

Pursuant to Local Rule 231(c)(8) and Federal Rule of Civil Procedure 65(b), any party affected by this Order shall have the right to apply to the Court for modification or dissolution of this Order on two (2) days' notice or such shorter notice as the Court may allow. No bond shall be required.

IT IS SO ORDERED.

Date: April 24, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE